IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMANDA NORTHRUP and PATRICK DUNN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: 1:15-cv-00258-KD-N ) |
| PHOENIX WEST II, LLC, PHOENIX WEST II OWNERS ASSOCIATION, INC., and BRETT/ROBINSON GULF CORPORATION, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## DEFENDANT PHOENIX WEST II, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant Phoenix West II, LLC ("Phoenix") files this Memorandum of Law in support of the contemporaneously filed Motion to Dismiss First Amended Complaint. In support, Phoenix states[1] as follows:

### INTRODUCTION

Plaintiffs pursue claims against Phoenix under Title III of the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. (the "Act"), alleging the existence

---

[1]   Phoenix adopts and incorporates by reference any additional arguments presented in co-defendant Brett/Robinson Gulf Corporation's contemporaneously filed Memorandum of Law in Support Motion to Dismiss First Amended Complaint.

of non-conforming barriers and non-conforming policies/procedures that limit or prevent Plaintiffs' access to, full enjoyment of, and opportunity to participate in programs at Phoenix West II (the "Building"), a condominium development in Orange Beach, Alabama.  Phoenix does not own, lease, lease to, or operate the Building or the individual condominiums within it.   Thus, the First Amended Complaint fails to state claims under the Act or its regulatory framework against Phoenix for which relief can be granted, and all such claims are due to be dismissed.

## STANDARD OF REVIEW

Rule 8(a)(2), Fed. R. Civ. P., sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. See Ashcroft v. Iqbal, 556 U.S. 662, 677-678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. at 678, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965, 167 L. Ed. 2d 929 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2

inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

Id. at 678-679, 129 S. Ct. at 1949-1950 (internal citations and quotation marks omitted); see also id. at 680, 129 S. Ct. at 1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); see Speaker v. U.S. Dep't of Health & Human Services Centers for Disease Control & Prevention, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in Twombly and Iqbal, [a plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'").

## PLAINTIFFS' FACTUAL ALLEGATIONS

The First Amended Complaint alleges that Phoenix "owns the real property and improvements at 23450 Perdido Beach Blvd, Orange Beach, 36561" which is "commonly known as Phoenix West II" (i.e., the Building).  See Doc. 33, ¶¶ 5 and 6.   This allegation, however, is false.   The First Amended Complaint simultaneously alleges that codefendant Phoenix West II Owners Association, Inc. (the "Association") "maint[ains] and operat[es] … the common elements of [the Building]" and refers to the "Alabama Secretary of State business records" regarding the Association.  See Doc. 33, ¶ 10.   Those records – in addition to confirming the First Amended Complaint's allegation about the Association's ownership, management, and operation of the Building – state that the Association's purpose is to "**own**, operate, lease, sell, trade, or otherwise deal with such property [i.e., the Building], real or personal, as may be necessary or convenient in the administration of [the Building]." See Doc. 12-1 (Certified Copy of Association's Articles of Incorporation), pp. 3-4 of 12 (emphasis added);[2] Doc. 22-1 (Declaration of Condominium of Phoenix West II, a Condominium).[3] Plaintiffs allege that codefendant Brett/Robinson Gulf Corporation

---

[2] Because the Association's Articles of Incorporation are indisputable and their subject matter is directly referenced in the Complaint, reference to them does not convert this motion to dismiss to a motion for summary judgment. Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999); Brooks v. Blue Cross and Blue Shield of Florida, 116 F.3d 1364, 1369 (11th Cir. 1997); Bozeman v. Lucent Techs., Inc., 378 F. Supp. 2d 1348, 1350 n. 1 (N.D. Ala. 2005).

[3] The Declaration states that the Building and the land upon which it lies were submitted to the condominium form of ownership of the Association. See Doc. 22-1, p. 8 of 78; n. 2, supra.

("Brett/Robinson") is the "rental agency responsible for maintaining and providing opportunities for guests to make reservations to [the Building] … via the internet." <u>See</u> Doc. 33, ¶ 9.

Plaintiff Northrup, it is alleged, contacted Brett/Robinson and "was informed that the [the Building] did not provide any ADA accessible rooms, and that the only ADA accessible rooms Brett-Robinson offers is [sic] located at the Phoenix All Suites Hotel." <u>See</u> Doc. 33, ¶ 9. Plaintiff Northrup did not make a reservation. <u>See</u> Doc. 33, ¶¶ 12-13. <u>She did not visit the Building or stay in a condominium in the Building</u>. <u>See</u> Doc. 33, ¶¶ 12-13.    Plaintiff Northrup is a serial filer of suits under Title III of the Act via her counsel in this suit; her other suits include <u>Northrup v. Starbucks Corp., et al.</u>, 1:15-cv-0034-CLC-WBC (E.D. Tenn.) and <u>Northrup v. Hamilton Place Mall Gen. P'ship, et al.</u>, 1:15-cv-00026-SKL (E.D. Tenn.).

Plaintiff Dunn, it is alleged, spoke with Brett/Robinson and "was informed that the [Building] did not provide any ADA accessible rooms, [sic and that the only ADA accessible rooms Brett-Robinson offers is [sic] located at the Phoenix All Suites Hotel." <u>See</u> Doc. 33, ¶ 14. Plaintiff Dunn allegedly made a reservation, stayed in a condominium in the Building, and encountered accessibility barriers and limitations in the Building, generally, and in the condominium in which he

stayed, specifically.[4]  See Doc. 33, ¶ 14. Plaintiff Dunn is also a serial filer of suits under Title III of the Act.  Acting through his attorney in this suit, Plaintiff Dunn has filed at least four other suits: <u>Dunn v. Beeson Enters.</u>, 2:15-cv-00130-WHA-CSC (M.D. Ala.); <u>Dunn v Eagle Holdings</u>, 2:14-cv-00539-PWG (M.D. Ala.); <u>Dunn v. NPC</u>, 2:15-cv-00144-WC (M.D. Ala.); and <u>Dunn v. First Family Restaurants</u>, 2:14-cv-00906-MHT-WC (M.D. Ala.).

## PLAINTIFFS' LEGAL CLAIMS

Plaintiffs allege various claims against Phoenix under the Act and its regulatory framework.  Specifically, Plaintiffs allege claims arising under

- 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) concerning the alleged existences of barriers in the Building and the individual condominium units in the Building,  <u>see</u> Doc. 33, Count One;

- 42 U.S.C. § 12182(b)(2)(A)(ii) concerning Phoenix's alleged failure to make reasonable accommodations in its policies, practices, and procedures regarding the Building, the individual condominium units in the Building, the related reservation system, the Building's programs, and the Building's rental program, <u>see</u> Doc. 33, Count Two;

- 42 U.S.C. § 12182(b)(2)(A)(ii) concerning Phoenix's alleged failure to comply with the Act's design standards and regulations applicable to the Building and the individual condominium units in the Building, <u>see</u> Doc. 33, Count Two;

---

[4] We know that Plaintiff Northrup never stayed at the facility and that Plaintiff Dunn is a male, yet, the Amended Complaint makes claims for violating the ADA in the women's toilet room by the pool (Doc. 33, p. 15) the women's toilet room on the second floor (Doc. 33, p. 16), women's toilet room in the fitness center (Doc. 33, p. 16),  the women's toilet room on level 14 (Doc. 33, p. 17) and the women's dry sauna (Doc. 33, p. 8). Such claims show that the Plaintiffs are not concerned about access but are rather are serial plaintiffs. Moreover, it is clear that Mr. Dunn's attorney visited the facility with Mr. Dunn, assuming Mr. Dunn even went to the facility, for the sole purpose of filing litigation.

- 42 U.S.C. § 12182(b)(1)(C) concerning Phoenix's alleged denial to Plaintiffs of the opportunity to participate in the rental program (and every other program) occurring on the Building's premises because there are no accessible condominiums or "facilities" in the Building, see Doc. 33, Count Three;

- 42 U.S.C. § 12182(b)(2)(A)(i) concerning Phoenix's alleged use of the reservation system to "screen out" Plaintiffs and other disabled persons, see Doc. 33, Count Four;

- 28 C.F.R. § 36.302 concerning Phoenix's alleged failure to (1) ensure that disabled persons can make reservations for accessible condominium units in the Building in the same hours and in the same manner as non-disabled persons and (2) to describe available accessible features, see Doc. 33, Count Five; and

- 42 U.S.C. § 12183 concerning "Defendant Phoenix West II['s]" alleged failure to design and construct the Building in a manner making it accessible and including accessible condominium units in the Building, see Doc. 33, Count Six.

For all that appears in the First Amended Complaint, however, Plaintiffs fail to state claims against Phoenix for which relief can be granted under the Act or its regulatory framework.

## ARGUMENT

**I.    Because Phoenix Does Not Own, Lease, Or Operate The Building, The First Amended Complaint Fails to Allege A Viable Claim Against Phoenix For The Failure To Remove Architectural Barriers; Thus, Count One Must Be Dismissed.**

Count One of the First Amended Complaint alleges that Phoenix violated 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) which provides as follows:

(a)    General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

****

(b)    Construction.

****

(2)    Specific prohibitions.

(A)    Discrimination. For purposes of subsection (a), discrimination includes –

****

(iv)    a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

(v)    where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

The alleged discrimination takes the form of the failure "to remove architectural barriers … where such removal is readily achievable, or, even if the removal is not readily achievable, by failing to use alternative methods that are readily achievable." See Doc. 33, ¶ 21.  Plaintiffs allege that the offending barriers exist in the parking lot, service areas, bathrooms, pool area, paths of travel, common areas, and recreational areas of the Building and in the individual condominiums in the Building.  See Doc. 33, ¶¶ 28 and 29.  The First Amended Complaint alleges that the Building is a "place of public accommodation." See Doc. 33, ¶ 19.

Only an individual or entity that owns, leases, leases to, or operates a place of public accommodation may be liable under 42 U.S.C. § 12182.[5]  See Steelman v. Florida, 2013 WL 1104746 *4-*5 (M.D. Fla. Feb 19, 2013) (citing Ariz. Ex rel. Goddard v. Harkins Amusement Enters., 603 F.3d 666, 670 (9th Cir. 2010); Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963 (9th Cir. 2006).  "To operate a place of public accommodation means to exercise control over the alleged discriminatory action and to have the authority to take remedial measures." Steelman, 2013 WL 1104746 at *4-*5.

---

[5] Plaintiffs' prior reliance on Roberts v. Royal Atl. Corp., 542 F.3d 363 (2nd Cir. 2008), is misplaced.  See Doc. 24, pp. 6-8.  In Roberts, the defendants not only owned a resort's land and buildings and approximately 140 of the resort's units but also were responsible for maintenance and repair related to the buildings, walkways, surrounding areas and other common areas. Roberts, 542 F.3d at 365-66.  In the instant case, Phoenix does not own the Building, and the Association is responsible for maintaining and repairing the Building's common areas.

The First Amended Complaint fails to allege that Phoenix leases, leases to, or operates the Building.  Plaintiffs' allegation that Phoenix owns the Building is false.  In reality, the Association owns the Building and improvements (excluding the individually owned condominiums); thus, the Association is the only entity that allegedly may exercise any control over the claimed architectural barriers in the Building and that has authority to take remedial measures to address any such barriers.[6]  See Doc. 12-1 and Doc. 22-1, p. 12 and 18 of 78, §§ 6.03 and 10.02 (Association is responsible for the maintenance and operation of all common elements which include the land and its improvements).  The condominiums within the building are privately owned by individuals over whom Phoenix can exercise no control.[7]  See Exhibit 12-1, § 3.02(2) ("Unit Owners"), § 3.02(13) ("rights of Unit Owners"), § 5.01 ("Unit Owners of record"), § 5.03 (membership established via "a deed or other instrument establishing record title to a Condominium Unit"), and § 5.06 ("the owner of each Unit…..").   Thus, any attempt in Count One to allege liability on Phoenix's part is conclusory and lacks properly pleaded factual support.   Count One, therefore, fails to state a viable claim for relief against Phoenix under 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) and is due to be dismissed.

---

[6] Plaintiffs allege that Phoenix "is also the manager of [the Association]."  See Doc. 33, ¶ 5.  This allegation is of no import.  The Association's alleged manager's authority to take remedial measure would arise only from the Association's authority, not an independent source.

[7] Plaintiffs allege that Phoenix "'owns' … the condominiums."  See Doc. 33, ¶ 5.  Plaintiffs simultaneously allege that the Association's members "own [the] condominiums."  See Doc. 33, ¶ 10.  It cannot be both, and the former is false.

**II.   Because Phoenix Does Not Own, Lease, Or Operate The Building Or The "Reservation System" And Plaintiffs Fail To Plead That They Requested Any Modifications Of Policies, Practices, Or Procedures, Count Two Of The Complaint Must Be Dismissed.**

Count Two of the First Amended Complaint alleges that Phoenix violated 42 U.S.C. § 12182(b)(2)(A)(ii).  The statute provides, in pertinent part, as follows:

> (a)   General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
>
> ****
>
> (b)   Construction.
>
> ****
>
> (2)   Specific prohibitions.
>
> (A)   Discrimination. For purposes of subsection (a), discrimination includes –
>
> ****
>
> (ii)   a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations….

11

The alleged discrimination takes the form of the failure "to make reasonable modifications" to policies, practices and procedures to "afford … goods, services, facilities, privileges, or accommodations to individuals with restricted mobility." See Doc. 33, ¶ 35.  The claimed "modifications" generally concern barrier removal in the Building, barrier removal in the condominiums in the Building, operation of the "reservation system," promotion of equal opportunity to participate in Building programs (including the "rental program"), and satisfaction of the design standards and regulations applicable to the Building and the condominiums in the Building. See Doc. 33, ¶¶ 35-43.

The Complaint fails to allege that Phoenix leases, leases to, or operates the Building.  Phoenix does not own the Building.  See Doc. 12-1.  The Association owns the Building and is the only entity that may exercise any control over the claimed architectural barriers in the Building and that has authority to take remedial measures to address any such barriers.   See Doc. 12-1; Doc. 22-1, p. 12 and 18 of 78, §§ 6.03 and 10.02; and n.4 and n. 5, supra.  The condominiums within the building are privately owned by individuals who are the only persons who may exercise control over barriers within the confines of each owner's condominium.  See Argument, § I, supra.  Thus, pursuant to the language of 42 U.S.C. § 12182(a), Phoenix (as a non-owner, non-lessor, non-lessee, and non-operator of the Building and the condominiums within it) cannot, as a matter of

law, be liable for Plaintiffs' 'reasonable modification" claims arising under the Act.

Moreover, a "reasonable modification" claim demands an "individualized inquiry … to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person" without working "a fundamental alteration." PGA Tour, Inc. v. Martin, 532 U.S. 661, 668, 149 L. Ed. 2d 904, 121 S. Ct. 1879 (2001). "A plaintiff who alleges that a defendant failed to reasonably modify its policies, practices or procedures must show that he or she actually requested a modification that was necessary for full and equal enjoyment and that such a modification is reasonable in the run of cases." Larsen v. Carnival Corp., 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003) (granting defendant's motion for partial summary judgment; citing Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1058-60 (5th Cir. 1997) (establishing burden framework in reasonable modification cases)) (emphasis added).

The First Amended Complaint fails to allege that Plaintiffs "actually requested a modification" of the policies, practices, and procedures about which they now complain. Such a request is a prerequisite to the viability of the claims

Plaintiffs attempt to plead in Count Two.[8]   The absence of such necessary allegations establishes that the liability Plaintiffs seek to impose is based upon conclusory statements and not a proffer of factual content sufficient to raise the allegations above mere speculation.  Plaintiffs' failure in this regard is fatal to their claims under 42 U.S.C. § 12182(b)(2)(A)(ii).  Count Two of the First Amended Complaint, therefore, is due to be dismissed.

## III.   Because Phoenix Does Not Own Or Operate The Condominiums Or The Building, Count Three Must Be Dismissed.

Count Three of the First Amended Complaint alleges that Phoenix violated 42 U.S.C. § 12182(b)(1)(C) which states, in part, as follows:

> (a)   General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

> (b)   Construction.

> (1)   General prohibition.

> ****

---

[8]   The First Amended Complaint alleges that a "request for modification of policies [sic] practices and/or procedures is not a requisite to filing a claim pursuant to" the provision of the Act at issue.  See Doc. 33, ¶ 51.  Phoenix's citation to authority above proves otherwise.  Thus, Plaintiffs are required to plead (which they cannot do in this instance) that they requested a modification of the alleged offending barriers, policies, practices, and procedures.  Plaintiffs prior reliance upon Ass'n of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357 (11th Cir. 2006), is misplaced.  See Doc. 24, pp. 8-10.  The holding in Neptune Designs does not relieve a plaintiff of his/her obligation to request a modification; in fact, the case does not even address the issue.  Id. at 1360.

> (C)     Opportunity to participate. Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different.

The alleged discrimination takes the form of denying Plaintiffs the opportunity to participate in the "rental program" and other programs at the Building because there are no accessible condominiums or "facilities" there. See Doc. 33, ¶¶ 42 and 43.

The First Amended Complaint fails to allege that Phoenix (1) leases, leases to, or operates the condominiums in the Building, (2) exercises any control over the alleged architectural barriers in those condominiums, or (3) has authority to take remedial measure to address such barriers in those condominiums. Individuals, not Phoenix, own the condominiums in the Building.   See Doc. 12-1 and Doc. 22-1, p. 12 and 18 of 78, §§ 6.03 and 10.02.  Thus, the inaccessibility of the condominiums' interiors is not the result of any act or omission by Phoenix. The allegation that Phoenix denied Plaintiffs the opportunity to rent accessible condominiums is conclusory, has no basis in the context of the First Amended Complaint's factual allegations, and is insufficient to rise above the level of mere speculation.  Similarly, because (as stated in ¶ 10 of the First Amended Complaint) the Association maintains and operates the Building and (as provided in Doc. 12-1

and Doc. 22-1, p. 12 and 18 of 78, §§ 6.03 and 10.02) owns the Building and the land upon which it lies, Phoenix cannot be liable for any violation of the Act with respect to the non-described "facilities" located at the Building, and any such claim in Count Three is also due to be dismissed.

**IV.  Because Phoenix Does Not Own Or Operate The "Reservation System" And The First Amended Complaint Fails To Allege That The "Reservation System" Was Inaccessible (And, Thus, Could Not Have Acted As A Screen), Count Four Must Be Dismissed.**

Count Four of the First Amended Complaint alleges that Phoenix violated 42 U.S.C. § 12182(b)(2)(A)(i) which provides as follows:

> (a)  General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

> ****

> (b)  Construction.

> ****

> (2)  Specific prohibitions.

> (A)  Discrimination. For purposes of subsection (a), discrimination includes –

> (i)  the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and

16

> equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered….

The alleged discrimination takes the form of Defendants' use of the "reservation system to screen out disabled" persons "for the purpose of preventing [them] from going to" the Building. See Doc. 33, ¶¶ 66-68.

The First Amended Complaint alleges that Brett/Robinson maintains the "reservation system" and fails to allege that Phoenix owns or controls the "reservation system."   Thus, if the "reservation system" is a public accommodation (which Phoenix disputes), Phoenix cannot be liable because the prerequisites to stating a viable claim under 42 U.S.C. § 12182 have not been satisfied.  Moreover, Plaintiffs fail to allege that the "reservation system" was constructed in such a way that Plaintiffs were unable to access or use it because of their claimed disabilities. See, e.g., Nat'l Fed'n of the Blind v. Scribd, Inc., 2015 U.S. Dist. Lexis 34213 (D. Vt. Mar. 19, 2015) (denying Rule 12(b)(6) relief; blind person sued Scribd alleging its website and mobile applications were inaccessible to the blind); Access Now v. Southwest Airlines, 227 F. Supp. 2d 1312 (S.D. Fla. 2002) (granting defendant's 12(b)(6) motion; plaintiff alleged defendant's website violated the Act because it was inaccessible to blind persons using a screen reader; district court noted

threshold issue was whether the website was a "place of public accommodation"; because the Act defined such places as concrete and a "facility" is a physical location, the Act did not apply to "virtual" spaces), appeal dismissed, Access Now v. Southwest Airlines Co., 385 F.3d 1324 (11th Cir. 2004).  In fact, the Complaint alleges that Plaintiffs were able to speak with Brett/Robinson about their specific needs which Brett/Robinson could not meet relative to condominiums in its listing inventory for the Building.  See Doc. 33, ¶¶ 12 and 14.  Although the First Amended Complaint alleges that Plaintiff Northrup (but not Plaintiff Dunn) was "screened out" by the "reservation system" for the Building, there is no allegation that the "reservation system" (presumably Brett/Robinson's website for its inventory of listings at the Building) was inaccessible to Plaintiffs.  See Doc. 33, ¶ 67.  Count Four of the Complaint, therefore, is due to be dismissed.

**V.    Based On The Allegations Of The First Amended Complaint, The Condominiums At Issue Are Not Subject To Federal Regulations Regarding Reservations; Thus, Count Five Must Be Dismissed.**

Count Five of the First Amended Complaint alleges that Phoenix violated 28 C.F.R.  § 36.302(e)(1)(i) and (ii).  The regulation states, in pertinent part, follows:

> (a)    General. A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the

18

nature of the goods, services, facilities, privileges, advantages, or accommodations.

****

(e)

(1)   Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party –

(i)   Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii)   Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs....

The alleged discrimination takes the form of Defendants' failure to ensure that Plaintiffs could make reservations during the same hours and in the same manner as non-disabled persons and Defendants' failure to describe the accessibility features of the condominiums in enough detail to permit Plaintiffs to assess whether the condominiums in the Building met their needs.  See Doc. 33, ¶ 77.

Although the First Amended Complaint alleges that the Building is a "place of lodging" presumably qualifying as a "public accommodation" under the Act,

Phoenix does not own, lease, lease to, or operate the condominiums within it and is not alleged to own or operate the "reservation system."  The requirements of 28 C.F.R. § 302(e), therefore, do not apply to Phoenix, and Count Five is due to be dismissed.  If the regulation were to apply (which it does not), private owners like those whose condominiums make up Brett/Robinson's listing inventory for the Building are <u>not</u> subject to compliance with (among other things) the Act's design, alteration, or barrier removal standards/requirements.  <u>See</u> 28 C.F.R. § 36.406(c)(2); 28 C.F.R. Pt. 36, App. A (§ 36.302(e) Hotel Reservations)).  Because the condominiums are not required to have accessibility features, there are none to describe or disclose to the public and no corresponding policy, practice, or procedure to modify in that regard.  <u>Id.</u>    Count Five of the Complaint, therefore, is due to be dismissed.

## VI.   Count Six Of The First Amended Complaint Fails to Allege A Viable Claim And Must Be Dismissed.

Count Six alleges that "there are no accessible condominiums" in the Building in violation 42 U.S.C.  § 12183.  <u>See</u> Doc. 33, ¶ 88.  The statute upon which Plaintiffs rely states as follows:

> (a)   Application of term. Except as provided in subsection (b), as applied to public accommodations and commercial facilities, discrimination for purposes of section 302(a) [42 USCS § 12182(a)] includes –

(1)     a failure to design and construct facilities for first occupancy later than 30 months after the date of enactment of this Act [enacted July 26, 1990] that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this title [42 USCS §§ 12181 et seq.]; and

(2)     with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. Where the entity is undertaking an alteration that affects or could affect usability of or access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General).

(b)    Elevator. Subsection (a) shall not be construed to require the installation of an elevator for facilities that are less than three stories or have less than 3,000 square feet per story unless the building is a shopping center, a shopping mall, or the professional office of a health care provider or unless the Attorney General determines that a particular category of such facilities requires the installation of elevators based on the usage of such facilities.

Section § 12183(a)'s reference to 42 U.S.C. § 12182(a) clearly establishes that the former's requirements apply only to the owner, lessor, lessee, or operator of a public accommodation. See, e.g., Reyes v. Fairfield Props., 661 F. Supp. 2d 249 n. 5 (noting claim under 42 U.S.C. § 12183 may only be brought against one who owns or operates a place of public accommodation). As previously established, Phoenix is none of these with respect to the Building or the condominiums within it. Count Six, therefore, contains mere conclusory statements of Phoenix's alleged liability without any supporting factual allegations. Accordingly, Count Six fails to state a plausible claim for relief against Phoenix and is due to be dismissed.

WHEREFORE, PREMISES CONSIDERED, Phoenix West II, LLC, requests that this Honorable Court enter an order dismissing all claims pleaded in the First Amended Complaint.

Respectfully Submitted,

/s/ Kori L. Clement
Kori L. Clement (CLEMK5125)
Attorney for Defendants Brett/Robinson
Gulf Corporation and Phoenix West II, LLC

OF COUNSEL:
HARE & CLEMENT, P.C.
100 Chase Park South
Suite 200
Hoover, Alabama  35244-1851
Telephone:  (205) 322-3040
Facsimile:  (205) 403-4975
Email:       clem@harelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of AUGUST, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide notification of such filing to the following:

L. Landis Sexton
THE ADA GROUP, LLC
2047 Carter Hill Road
Montgomery, Alabama  36106
*Attorney for Plaintiffs*

T. Matthew Miller
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 5th Avenue North
Birmingham, Alabama 35203-2119
*Attorney for Defendant Phoenix West II Owners Association, Inc.*

/s/ Kori L. Clement
Of Counsel