IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PATRICK DUNN, ) | |
| ) | |
| Plaintiff,[1] ) | |
| ) | |
| vs. ) | Civil Action No. 15-00258-KD-N |
| ) | |
| PHOENIX WEST II, LLC, PHOENIX ) | |
| WEST II OWNERS ASSOCIATION, INC, ) | |
| and BRETT ROBINSON GULF CORP., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This action is before the Court on the Defendants Phoenix West II, LLC, Phoenix West II Owners Association, Inc., and Brett/Robinson Gulf Corporation's motions to dismiss the first amended complaint and memoranda in support (Docs. 38-41, 43-44, 46), Plaintiff's responses (docs. 47, 48, 52), Defendants' replies (Docs. 49, 50, 54), the Report and Recommendation entered by the Magistrate Judge, Defendants' objections (Docs. 63-65), Plaintiff's objections (Doc. 66), and Defendants' responses to Plaintiff's objections (Doc. 67, 68). The Court heard the parties' respective oral arguments on January 26, 2016.

After due and proper consideration of the issues raised, and a *de novo* determination of those portions of the recommendation to which objection is made, the Report and Recommendation (Doc. 62) of the Magistrate Judge dated November 9, 2015, and made under 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), and S.D. Ala. GenLR 72(a)(2)(S), is **ADOPTED, in part, as follows,** as the opinion of this Court.

---

[1] Amanda Northrup is no longer a plaintiff in this action. (Doc. 56)

I. <u>Factual allegations and claims</u>

Dunn resides in Andalusia, Alabama. As a result of an automobile accident in 2001, Dunn is paralyzed, is permanently confined to a wheelchair, and is restricted in his ability to use his hands, arms, and legs. Dunn and his family planned a vacation at the Phoenix West II condominium facility in Orange Beach, Alabama (hereinafter, "the Facility"), in April 2015.

In March 2015, Dunn called the Facility to inquire about accessible rooms. Dunn spoke with an employee of Brett/Robinson, who informed Dunn that the Facility did not provide ADA-accessible rooms and that the only ADA accessible rooms Brett/Robinson offers are located at another facility, the Phoenix All Suites Hotel. Further inquiring about the accessibility at the hotel and the size of the rooms, Dunn was informed by the Brett/Robinson employee that the rooms available had bunk beds in the hall. Upon this information, Dunn went online to determine if the hotel would meet his accessibility needs but was unable to because Brett/Robinson did not sufficiently identify and describe the accessible features on the website. As a result, Dunn went to the Facility's website to determine if it had any accessible features at all and to assess whether the Facility would be large enough for him to make do. His review of the Facility's website was inconclusive because the website lacked sufficient information.

Ultimately, Dunn decided to go to the Facility, made reservations, and went there with his family and friends. During Dunn's visit he went from the parking lot to the entranceways, from the parking lot to and throughout the Facility, including his rented condominium, the services areas, bathrooms, pool area, the pier, paths of travel, common areas, recreational areas, the fitness center, and the men's sauna. The kitchen, bedroom, bathroom, balcony, and seating area in Dunn's rented condominium were not accessible to him, and Dunn encountered

architectural barriers to accessibility in other common areas of the Facility that he visited.

"Mr. Dunn not only intends to return to [the Facility] in the future, but also has concrete and realistic plans to do exactly that. Generally, Mr. Dunn visits Orange Beach frequently because of its proximity to his home. Specifically, Mr. Dunn will definitely return in Spring 2016 for a similar vacation as his 2015 visit … It is a virtual certainty that he will return again in Spring 2017 for a similar vacation visit. Moreover, Mr. Dunn will absolutely continue to return at least once a year as necessary to verify that [the Facility] is ADA-compliant to his satisfaction." (Doc. 61).

Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* (hereinafter, "Title III"), concerning "Public Accommodations and Services Operated by Private Entities," generally provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

Dunn's First Amended Complaint (Doc. 33) asserts six counts against the Defendants, alleging various violations of Title III:

> Count 1 (against all Defendants) – Unlawful discrimination under § 12182(a) for "failure to remove architectural barriers … in existing facilities, where such removal is readily achievable[,]" 42 U.S.C. § 12182(b)(2)(A)(iv) or, "where an entity can demonstrate that the removal of a barrier under [§ 12182(b)(2)(A)(iv)] is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." *Id*. § 12182(b)(2)(A)(v).

> Count 2 (against all Defendants) – Unlawful discrimination under § 12182(a) for "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services…" 42 U.S.C. § 12182(b)(2)(A)(iii).

Count 3 (against all Defendants) – Unlawful denial of the opportunity to participate, in violation of 42 U.S.C. § 12182(b)(1)(C) ("Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different.") – specifically, "the opportunity to participate equally in the rental program for the condominiums at Phoenix West II condominiums at Phoenix West II because Defendants do not maintain any accessible condominiums and/or facilities at Phoenix West II[,]" and "the opportunity to participate at each and every program and activity at Phoenix West II, because the defendants do not maintain any accessible condominiums and/or facilities at Phoenix West II." (Doc. 33 at 25, ¶¶ 56 – 57).

Count 4 (against all Defendants) - Unlawful discrimination under § 12182(a) for "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations…" 42 U.S.C. § 12182(b)(2)(A)(i) – specifically, "Defendants utilize the reservation system to screen out disabled individuals, so that they do not come to Phoenix West II. The screening out process specifically involves directing disabled individuals away from Phoenix West II to a hotel alleged by the reservation system to be ADA compliant, but that in reality is not ADA compliant." (Doc. 33 at 27, ¶ 66).

Count 5 (against all Defendants) - Unlawful discrimination under § 12182(a) for "failing to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as nondisabled individuals, pursuant 28 C.F.R. § 36.302(e)(1)(i), and by failing to describe the accessible features in the hotel and guest rooms offered through its reservations' service both in advertisements and online in enough detail to reasonably permit individuals with disabilities to assess independently whether the condominium meets their accessibility needs, pursuant to 28 C.F.R. § 36.302(e)(1)(ii)."2 (Doc. 33 at 28, ¶ 77) – specifically, "Dunn could not determine from the existing systems and advertisements whether his condominium was accessible." (Id. at 28 – 29, ¶ 78).

Count 6 (against Phoenix West II only) - Unlawful discrimination under § 12182(a) for "failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by

4

individuals with disabilities…" 42 U.S.C. § 12183(a)(1).

## II. Standing

The Court adopts the recommendation as to Plaintiff's standing to bring this action. (Doc. 62, Report and Recommendation, Section A., p. 10-20)  Accordingly, Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of standing are DENIED.

## III. Phoenix West II, LLC

The Court adopts the recommendation as to Counts 2 and 4 of the first amended complaint. (Doc. 62, p. 34-37 through the second paragraph)  Accordingly, Phoenix West II, LLC's motion to dismiss as to Counts 2 and 4 is GRANTED.

The Court declines to adopt the recommendation as to Counts 1, 3, 5, and 6 as it relates to Phoenix West II. (Doc. 62, p. 25-29 (Counts 1, 3, and 6); p. 37-39 (Count 5))  These counts are premised upon factual allegations that Phoenix West II failed to provide ADA accessible rental units in violation of 42 U.S.C. § 12182(a).  This section addresses "Public Accommodations and Services Operated by Private Entities" and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment" of the facilities of "any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

To survive a motion to dismiss, Plaintiff must allege sufficient facts to support his allegation that Phoenix West II "**owns** . . . a place of public accommodation".  The alleged place of accommodation is the Phoenix West II Facility.  Plaintiff relies on the condominium documents to support his allegation that Phoenix West II owns the Facility at issue.  In that regard, the Declaration of Condominium states that Phoenix West II owns a fee simple interest in

5

the property and improvements that are Phoenix West II condominiums.[2]  However, that statement simply describes Phoenix West II's status and authority to submit the property and improvements to condominium ownership under the Alabama Uniform Condominium Act of 1991 ("AUCA").

The AUCA provides for creation of a condominium and states in part, that a "condominium may be created pursuant to this chapter only by filing a declaration executed in the same manner as a deed …".  Ala. Code § 35-8A-201.  The "Declaration" is defined as "[a]ny instruments, however denominated, that create a condominium, and any amendments to those instruments." Ala. Code § 35-8A-103.  The Declaration defines "Condominium Property" or the "Property" as "all property, both real, personal or mixed, which is submitted to the Condominium form of ownership as provided for herein and includes the Real Property and all improvements . . ." (Doc. 44-1, ¶ 1.13). As to ownership, the Declaration states that "[e]ach owner shall be entitled to exclusive ownership and possession of his unit" and that "[e]ach owner shall be entitled to an undivided interest in the common elements in the percentages expressed in this Declaration[.]" (Doc. 44-1, ¶ 9.01)  The Declaration also provides a "schedule setting forth the percentage of undivided interest of each unit in the common areas[.]" (Doc. 44-1, ¶ 7.01) In sum, by this Declaration Phoenix West II relinquished its fee simple ownership in favor of condominium ownership.  Thus, the Declaration does not support Plaintiff's claim that Phoenix West II owns the Facility.

At oral argument, Plaintiff relied on the Baldwin County property tax records to show that Phoenix West II still owns at least ten condominium and thus owns the Facility.  A "unit

---

[2] "Developer [Phoenix West II] is the fee simple owner of that certain parcel of real property …" (Doc. 44-1, p. 6)

owner" is defined in Ala. Code § 35-8A-103: "Unit owner. A declarant or other person who owns a unit . . . In a condominium, the declarant is the initial owner of any unit created by the condominium".  However, initial ownership of condominium units does not make Phoenix West II the owner of the Facility.

Plaintiff's conclusory allegation that Phoenix West II "owns" the Facility is insufficient and without factual support.  Accordingly, since an entity must be an owner to be liable under the relevant ADA provisions,[3] Phoenix West II's motion to dismiss Counts 1, 3, 5, and 6 is **GRANTED**.

**IV. Phoenix West II Owners Association, Inc.**

The Court **adopts** the recommendation as to Count 2 of the first amended complaint. (Doc. 62, p. 34-35)  Accordingly, the Association's motion to dismiss as to Count 2 is **GRANTED**.

The Court **declines to adopt** the recommendation to deny the Association's motion to dismiss as to Count 4 (doc. 62, p. 37).[4]  The Association objects to the recommendation and argues that the same rationale that resulted in the recommendation to dismiss this count as to Brett/Robinson and Phoenix West II, should apply to the Association (doc. 65, p. 7, 20-21).   The Court agrees. Accordingly, the Association's motion to dismiss as to Count 4 is **GRANTED.**

---

[3]  Counts 2 and 4 are also subject to dismissal on this basis as well as that delineated by the Magistrate Judge.

[4]  The Magistrate Judge found that the Association argued only that it did not own or operate the rental reservation system (doc. 62, p. 37).  However, the Association also argued that it did not own units or rent units to third parties, in addition to arguing that it did not maintain a rental reservation system.  The Association also argued that "[m]any individual unit owners do not rent their units, but those who choose to do so may rent them directly or use a rental agency such as Brett Robinson." (Doc. 44, p. 11)

The Court **declines to adopt** the recommendation to deny the motion to dismiss as to Counts 1 and 3, as it relates to the Association. (Doc. 62, p. 25-29 (Counts 1, 3)  Counts 1 and 3 allege violations of 42 U.S.C. § 12182(a) of the ADA, which prohibits any person who owns or operates any place of public accommodation from discriminating against disabled individuals in the full and equal enjoyment of the facilities.  In that regard, Plaintiff alleges that the "Association [both] 'operates' the condominiums and 'owns' the condominiums." (Doc. 33, p. 8) However, no facts are alleged which support Plaintiff's allegation that the Association "owns" the Facility, any condominium unit, or the common areas. (Doc. 33, ¶ 10)  Instead, Plaintiff only alleges that the Association has control and dominion over the condominiums and the authority to "maintain and operate all aspects of the condominiums and in particular the maintenance and operation of the common elements and any and all rules and regulations for the condominiums." (Doc. 33, p. 8)[5]

However, there are no plausible facts alleged that the Association operates or controls the individually-owned condominium <u>units</u>.  Plaintiff alleges that the Association "exercises full regulatory control over the actions of condominium owners in relation to their condominiums and is able to take remedial actions in relation to owners." (Doc. 33, p. 8)  But this conclusory statement appears to be speculative and not supported by any fact.  Specifically, the Plaintiff fails to allege facts to support the contention that the Association has authority to require any control over condominium unit owners to alter the interiors of the units to make the units accessible.  Even assuming for purpose of the motion to dismiss that the interiors of the individual

---

[5] The Declaration defines the "common elements of the condominium" to include "all parts of the condominium property not located within the perimeter boundaries of the apartment units" and lists items such as balconies and decking, "attics, foundations, columns, girders, beams, and support of building and such component parts of walls, roofs, floors and ceilings as are not located within the units." (Doc. 44-1, p. 12, ¶ 6.03)

condominium units could possibly be a place of public accommodation,[6] there are no facts to support that the Association "operates" the interiors such that relief could be granted. *Steelman v. Florida*, 2013 WL 1104746, at *2 (M.D. Fla. Feb. 19, 2013) report and recommendation adopted, 2013 WL 1104256 (M.D. Fla. Mar. 18, 2013) ("To 'operate' a place of public accommodation means to exercise control over the alleged discriminatory action and to have the authority to take remedial measures.") (citing *Neff v. American Dairy Queen Corp.,* 58 F. 3d 1063, 1067 (5th Cir. 1996) (explaining that the relevant inquiry is whether defendant according to the terms of the franchise agreement "controls modification of the San Antonio Stores to cause them to comply with the ADA."); *Lemmons v. Ace Hardware Corp.*, 2014 WL 3107842, at *7 (N.D. Cal. July 3, 2014) ("Lemmons points to no evidence to show that Ace retained the authority under the agreement to dictate the physical layout of the store, or that [it] otherwise participated in the alleged acts of discrimination against Plaintiff. In the absence of such evidence, the Court cannot conclude that Ace had control over the store such that it could ensure nondiscrimination against the disabled.").

Moreover, the common elements are owned by the individual unit owners and are for exclusive use of the owners, their guest and tenants.  Thus, although the Association controls the common elements, they are amenities for the unit owners and are not "public accommodations".  The only possible exception is the rental office that is located on the premises.  Plaintiff has

---

[6] However, *see Mabson v. Ass'n. of Apt. Owners of Maui Kamaole*, 2007 WL 23633349, *10 (D. Hi. Aug. 13, 2007)  (finding that residential condominiums were not a place of public accommodation and "[t]hat there may be some short-term rental units within the condominium would not change that result. Even for short-term rental situations, the owners still would have a choice as to whether or not to rent the unit and to whom to rent the unit.") (citing *Thompson v. Sand Cliffs Owners Ass'n, Inc*., 1998 WL 35177067, at *3 (N.D.Fla. March 30, 1998) (noting that even if an owner were to rent a unit, that owner "is still free to use his condominium at anytime, and he may also decide not to rent it out at all," and "when the units are not being rented, there is no question that they remain the owners' residences").

alleged that there is an office in the Facility where the public may walk in and make a reservation to rent a condominium unit.   If true, this part of the Facility would be required to be ADA compliant.  *Sapp v. MHI P'ship, Ltd.,* 199 F. Supp. 2d 578, 586-87 (N.D. Tex. 2002) (A model home that is also used as a sales office is subject to ADA requirements.)  However, the Plaintiff has failed to make any allegations to support that the rental/sales office was not ADA compliant.

Accordingly, the Association's motion to dismiss as to Counts 1 and 3 is **GRANTED**

The Court **declines to adopt** the recommendation to deny the Association's motion to dismiss as to Count 5 (doc. 62, p. 38).  In Count 5, Plaintiff alleges that the Defendants violated the ADA "by failing to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as nondisabled individuals" and "by failing to describe the accessible features in the hotel and guest rooms offered through its reservations' service both in advertisements and online in enough detail to reasonably permit individuals with disabilities to assess independently whether the condominium meets their accessibility needs[.]" (Doc. 33, p. 28)  In relevant part, the regulation provides for "[r]eservations made by places of lodging" and states that

> a public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means . . .  or through a third-party –
>
> (i) modify its policies, practices or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii) identify and describes accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.

28 C.F.R. § 36.302(e)(1)(i)(ii).

Plaintiff alleges that Brett/Robinson as the rental management agent for the individual condominium unit owners operates the reservation system. *See* Section V. Plaintiff has failed to allege sufficient facts to show how the Association owns or operates or has any control or authority over the descriptions of the accessible features within the individual condominium units, *i.e.*, the alleged "guest rooms", rented through Brett/Robinson. (Doc. 33, p. 7-8) Accordingly, the Association's motion to dismiss as to Count 5 is **GRANTE**D.

## V. Brett/Robinson Gulf Corporation

The Court **adopts** the recommendation as to Counts 1, 2, 3 and 4. (Doc. 62, p. 29-33 (Count 1 and 3); p. 34-35 (Count 2); p. 36-37 through the second paragraph (Count 4)) Accordingly, Brett/Robinson's motion to dismiss as to Counts 1, 2, 3 and 4 is **GRANTED**.

The Court **declines to adopt** the recommendation as to Count 5. (Doc. 62, p. 37-39) The statute provides that "[n]o individual shall be discriminated against on the basis of disability . . . by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Count 5 is premised on the regulation that states that a "public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations…" make modifications to its policies, procedures and practices to comply with the ADA. 28 C.F.R. § 36.302(e)(1)(i)(ii).  Thus, Plaintiff must allege sufficient facts to render plausible that Brett/Robinson owns, leases or operates a place of public accommodation.

The Plaintiff alleges only that Brett/Robinson is a third-party entity that provides a rental management program for the individual condominium owners. (Doc. 62, p. 30)[7]  Specifically,

---

[7] Plaintiff alleges that ". . . Brett Robinson is the rental management entity for the individual property owners of the condominiums. In ADA terms, Brett Robinson "operates" the transient lodging rental program at the condominiums and "leases" or "leases to" the short term renters of

11

Plaintiff has pled that Brett/Robinson is the "rental management entity for the individual property owners of the condominiums" that "offers to the individual property owners of the condominiums" a range of services for the condominiums leased through Brett/Robinson. Plaintiff also alleges that Brett/Robinson "is the rental agency responsible for maintaining and providing opportunities for guests to make reservations to the Phoenix West II via the internet." (Id.) However, Plaintiff has not alleged plausible facts to support that Brett/Robinson owns, leases or operates the Facility at issue.[8]

Also, Plaintiff has not alleged plausible facts to support that Brett/Robinson, as a rental management service or rental agent for the individual property owners, has any authority to take remedial measures to modify the Facility. *Steelman*, 2013 WL 1104746, at *2 ("To 'operate' a place of public accommodation means to exercise control over the alleged discriminatory action

---

the condominiums. 42 U.S.C. § 12182. Brett Robinson's responsibilities include promoting the property, finding customers for the rental program, and providing excellent service during the renters stay. Brett Robinson offers to the individual property owners of the condominiums a strategic marketing program; specialized reservations training; a website with interior and exterior photos and virtual tours; an owners website with a list of booking, work orders, and financial statements; annual property inspections and recommendations; provide the owners information and address service requests; maintenance service available 24 hours; commercial laundry and linen services; individual monthly accounting with direct deposit service available; storm recovery assistance; constant review of industry trends to remain competitive and maximize rentals; a 22% management fee; provide blankets, mattress pads, pillows, pillow protectors, potholders, shower linens, towels, and linen; limit the number of guests in the unit to the bedding and inspect properties between guests stays. Brett Robinson is the rental agency responsible for maintaining and providing opportunities for guests to make reservations to the Phoenix West II via the internet." (Doc. 33, p. 6-7).

[8] Additionally, the individually-owned condominiums do not appear to be subject to the ADA. *See* 28 C.F.R. § 36.406(c)(2) ("Alterations to guest rooms in places of lodging where the guest rooms are not owned or substantially controlled by the entity that owns, leases, or operates the overall facility and the physical features of the guest room interiors are controlled by their individual owners are not required to comply with § 36.402 or the alterations requirements in section 224.1.1 of the 2010 Standards."); 28 C.F.R § 36.406(c)(3), applicable to "transient lodging guest rooms" in "Places of lodging" subject to the ADA, provides that in "[f]acilities with residential dwelling units and transient lodging units", the "[r]esidential dwelling units that are designed and constructed for residential use exclusively are not subject to the transient lodging standards."

and to have the authority to take remedial measures.") (citing *Neff,* 58 F. 3d at 1067 (explaining that the relevant inquiry is whether defendant according to the terms of the franchise agreement "controls modification of the San Antonio Stores to cause them to comply with the ADA."); *Lemmons*, 2014 WL 3107842, at *7 ("Lemmons points to no evidence to show that Ace retained the authority under the agreement to dictate the physical layout of the store, or that [it] otherwise participated in the alleged acts of discrimination against Plaintiff. In the absence of such evidence, the Court cannot conclude that Ace had control over the store such that it could ensure nondiscrimination against the disabled."). Accordingly, Brett/Robinson's motion to dismiss as to Count 5 is **GRANTED**.

**DONE** and **ORDERED** this 23rd day of February 2016.

/s/ Kristi K. DuBose  
**KRISTI K. DuBOSE**  
**UNITED STATES DISTRICT JUDGE**